**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Case No. 26-cv-01290-NYW

EDUARDO GREGORIO SILVA NELO,

      Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
GEORGE VALDEZ,[1] in his official capacity,
MARKWAYNE MULLIN, in his official capacity,
TODD LYONS, in his official capacity, and
TODD BLANCHE,[2] in his official capacity,

      Respondents.

_____

**MEMORANDUM OPINION AND ORDER**

_____

[1] Petitioner names Robert Guadian as a Respondent in his official capacity as the Director of the Denver Field Office of U.S. Immigration and Customs Enforcement ("ICE"). [Doc. 1 at ¶ 18]. This Court takes judicial notice that as of late October 2025, Mr. Guadian is no longer the Field Office Director for ICE's Denver Field Office. *See* Seth Klamann, *Denver's Top ICE Official Says He Was Reassigned to Virginia*, Denv. Post (Oct. 30, 2025, at 06:38 PM MDT), https://www.denverpost.com/2025/10/30/colorado-immigrations-enforcement. Counsel for Respondents replaced Mr. Guadian with George Valdez as the Field Officer Director of ICE's Denver Field Office in the case caption when filing their Response. [Doc. 8 at 1 n.1]. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court **DIRECTS** the Clerk of Court to **SUBSTITUTE** George Valdez for Robert Guadian as a Respondent in this action.

[2] Petitioner names Pamela Bondi as a Respondent in her official capacity as Attorney General of the United States. [Doc. 1 at ¶ 20]. This Court takes judicial notice that as of early April 2026, Ms. Bondi is no longer the Attorney General of the United States, and Todd Blanche is the Acting Attorney General of the United States. *See* Tyler Pager & Glenn Thrush, *Trump Fires Pam Bondi as Attorney General*, N.Y. Times (Apr. 2, 2026), https://www.nytimes.com/2026/04/02/us/politics/trump-fires-bondi-attorney-general.html; U.S. Dep't of Justice, Meet the Acting Attorney General, https://www.justice.gov/ag/staff-profile/meet-acting-attorney-general-0 (last updated Apr. 22, 2026); *see also* [Doc. 8 at 1 n.2]. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court **DIRECTS** the Clerk of Court to **SUBSTITUTE** Todd Blanche for Pamela Bondi as a Respondent in this action.

This matter is before the Court on the Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Petition"), filed by Petitioner Eduardo Gregorio Silva Nelo ("Petitioner" or "Mr. Silva Nelo"). [Doc. 1]. Respondents filed a consolidated response in opposition. [Doc. 8]. For the reasons set forth below, the Petition is **GRANTED in part**.

### BACKGROUND

Mr. Silva Nelo is a citizen of Venezuela who "crossed the southern border of the United States without inspection to seek asylum" in October of 2023. [Doc. 1 at ¶¶ 16, 21]. Shortly thereafter, he was apprehended and detained by United States Custom and Border Protection ("CBP"). [*Id.* at ¶ 21]. Mr. Silva Nelo was then placed into expedited removal proceedings and was given a reasonable fear screening by an officer at the border. [*Id.* at ¶ 22]. The officer found that Mr. Silva Nelo had not demonstrated a reasonable fear of return to Venezuela, but an immigration judge reviewed this determination and vacated it. [*Id.* at ¶ 23]. The judge found that Mr. Silva Nelo did in fact have a reasonable fear of return to Venezuela and accordingly placed him in removal proceedings under § 240 of the Immigration and Nationality Act ("INA"). [*Id.* at ¶¶ 23–24]. On or about February 1, 2024, Mr. Silva Nelo was released from detention on humanitarian parole with a Notice to Appear in immigration court. [*Id.* at ¶ 25; Doc. 1-2 at 12].

More than a year later, on February 13, 2025, Mr. Silva Nelo filed a petition for asylum. [Doc. 1 at ¶ 26]. On June 4, 2025, he was taken into custody by United States Immigration and Customs Enforcement ("ICE") and has been detained at the GEO Group ICE Contract Detention Facility in Aurora, Colorado ever since. [*Id.* at ¶¶ 33, 35]. While

in custody, Mr. Silva Nelo resubmitted his asylum application, which was granted by an immigration judge on November 22, 2025. [*Id.* at ¶¶ 36–37]. The Department of Homeland Security ("DHS") appealed the grant of asylum on December 18, 2025, and as of March 13, 2026, there was still no briefing schedule set on the appeal. [*Id.* at ¶¶ 38–40].

After being granted asylum, Mr. Silva Nelo requested a bond hearing due to changed circumstances. [*Id.* at ¶ 41]. That hearing was held on January 30, 2026, and the presiding immigration judge granted bond in the amount of $3,000. [*Id.* at ¶¶ 41–42]. DHS appealed the grant of bond and stayed the judge's bond order. [*Id.* at ¶ 43]. The immigration judge subsequently revoked bond and then reinstated bond, based on changes in the law, namely the Central District of California's order vacating *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025). [*Id.* at ¶¶ 44–45]; *see also Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025). The grant of bond was reinstated on February 22, 2026, [Doc. 1-2 at 72–73], and the next day, DHS appealed, [*id.* at 74; Doc. 1 at ¶ 46]. The Government currently purports to detain Mr. Silva Nelo pursuant to the automatic stay that follows an appeal of a bond determination pursuant to 8 C.F.R. § 1003.19(i)(2). [Doc. 8 at 3–4].

Mr. Silva Nelo brings five claims challenging the lawfulness of his detention: (1) violation of his Fifth Amendment substantive due process rights ("Count One"); (2) violation of his Fifth Amendment procedural due process rights ("Count Two"); (3) violation of the INA ("Count Three"); (4) violation of his right against unreasonable seizure ("Count Four"); and (5) violation of the Administrative Procedure Act ("Count Five"). [Doc. 1 at ¶¶ 55–71]. Mr. Silva Nelo seeks, among other things, a writ of habeas

corpus ordering that he be immediately released from custody.  [*Id.* at 15].  He also asks for "attorneys' fees and costs of this suit under the Equal Access to Justice Act."  [*Id.*].

Petitioner has not filed a reply to Respondents' Response and this matter is ripe for disposition.  No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary.  *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

## LEGAL STANDARD

### I.    Habeas Corpus

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

### II.    Automatic Stay Provision

Under 8 U.S.C. § 1226(a), non-citizens may be detained pending a decision whether they are to be removed from the United States.  8 U.S.C. § 1226(a).  Non-citizens detained pursuant to § 1226 have the right to seek release on bond.[3]   8 U.S.C.

---

[3] While Respondents' position on appeal before the BIA is that Mr. Silva Nelo is subject to mandatory detention under Section 1225(b)(2)(a), [Doc. 8 at 2], Respondents appear to concede in their briefing that Petitioner is currently in custody pursuant to Section

§ 1226(a)(2); *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *8 (D. Colo. Oct. 22, 2025).  If bond is granted, DHS may appeal that determination to the BIA.  8 C.F.R. § 1003.19(f).  Once DHS files a timely notice of intent to appeal, "any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed."  8 C.F.R. § 1003.19(i)(2).  This stay is "[a]utomatic" and causes the release order to "remain in abeyance pending decision of the appeal by the Board."  *Id.*

If the BIA does not act on the appeal of the bond determination, the automatic stay "lapse[s] 90 days after the filing of the notice to appeal."  8 C.F.R. § 1003.6(c)(4). However, at that point, "DHS may seek a discretionary stay pursuant to 8 C.F.R. § 1003.19(i)(1)" to continue to stay the immigration judge's order.  8 C.F.R. § 1003.6(c)(5). That stay remains in effect "during the time it takes for the [BIA] to decide whether or not to grant a discretionary stay," not to exceed 30 days.  *Id.*  If the BIA authorizes the non-citizen's release, denies a motion for discretionary stay, or fails to act on such a motion before the automatic stay period expires, the non-citizen's release is "automatically stayed for five business days."  8 C.F.R. § 1003.6(d).  During that additional 5-day period,

---

1226(a), *see, e.g.*, [*id.* at 5–6 (explaining that "§ 1226(a) gives the Attorney General discretion to release certain aliens on bond," but an immigration judge's decision at such a bond hearing is not immediately operative if the Government appeals); *id.* at 8 (arguing that the automatic stay provision is constitutional, and "[i] accordance with the APA, it ensures that the Attorney General's decision on bond under 8 U.S.C. § 1226(a) is not operative where bond has been set by an immigration judge but has been timely appealed to the BIA")].  Further, the Government informed Petitioner at the time of detention that it is detaining him pursuant to § 1226.  [Doc. 1-2 at 76 (DHS's Notice of Custody Determination dated July 2025 states that DHS will be detaining Petitioner pending a final administrative determination in his case "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act," which is codified as 8 U.S.C. § 1226)]; *see also* [*id.* at 63 (in granting bond, the immigration judge found that Petitioner "is in proceedings pursuant to INA section 236")].  Accordingly, the Court finds that Mr. Silva Nelo is currently detained pursuant to § 1226.

DHS can choose to refer the bond decision to the Attorney General, which extends the automatic stay for another 15 business days. *Id.* The Attorney General can then extend the stay "pending the dispositive of [the] custody case." *Id.*

## ANALYSIS

The question before the Court is whether DHS's application of the automatic stay, 8 C.F.R. § 1003.19(i)(2), violates Petitioner's rights. As Respondents acknowledge, the Tenth Circuit has not ruled on this issue. [Doc. 8 at 4]. The Court's analysis begins and ends with Count Two, Petitioner's argument that DHS's application of the automatic stay here violates his Fifth Amendment procedural due process rights, because the Court finds it to be dispositive.

To determine whether a civil detention violates a detainee's due process rights, courts consider the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335; *see also Moreno Santana v. Baltazar*, No. 26-cv-00787-WJM-SBP, 2026 WL 709759, at *3 (D. Colo. Mar. 13, 2026) (collecting cases from this District that have applied the *Mathews* test in immigration habeas cases, including in cases deciding the same question as presented here). All three *Mathews* factors strongly support Mr. Silva Nelo's position

6

that DHS's application of 8 C.F.R. § 1003.19(i)(2) violates his procedural due process rights.[4]

**Private interest.**    There is no question that Mr. Silva Nelo has a significant private interest at stake.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (for purposes of the first *Mathews* factor, "the interest in being free from physical detention" is "the most elemental of liberty interests").  An immigration judge determined months ago that Mr. Silva Nelo does not pose a flight risk or danger to anyone.  [Doc. 1-2 at 62–64].  Mr. Silva Nelo has no criminal record and has not been accused of a crime.  *See* [*id.*].  His application for asylum has been granted, [*id.* at 20–33], meaning that an immigration judge has determined that Mr. Silva Nelo has demonstrated that he is unwilling or unable to return to Venezuela because of past persecution or well-founded fear of future persecution, on account of his race, religion, nationality, membership in a particular social group, or political opinion, *see Uanreroro v. Gonzales*, 443 F.3d 1197, 1202 (10th Cir. 2006).  Despite these facts, as a result of the automatic stay, Mr. Silva Nelo has lost his freedom for months—on top of the over 8 months he had already spent in "a detention facility that 'strongly resemble[s]  penal confinement.'"  *Rivas v. Baltazar*, No. 26-cv-00442-SKC, 2026 WL 444732, at *3 (D. Colo. Feb. 17, 2026) (quoting *Arostegui-*

---

[4] The Response does not include any arguments as to the *Mathews* factors as specifically applied to Mr. Silva Nelo's case.  *See* [Doc. 8].  Instead, "Respondents acknowledge that this Court has previously rejected Respondents' arguments," which is not the case.  *See* [*id.* at 4 (citing *Arana-Hernandez*, a case decided by Judge Sweeney, not the undersigned)].  Respondents presume that the ruling in *Arana-Hernandez* "would lead the Court to reach the same result here, as the facts are not materially distinguishable from that prior case."  [*Id.*].  So, Respondents attach to their response and "incorporate their arguments on these issues from *Arana-Hernandez*, 26-cv-00725-CNS, ECF No. 11 at 3–13," "in order to preserve their arguments."  [Doc. 8 at 4].  The Court is not persuaded by this briefing for the same reasons as explained in this Order.

*Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 940 (D. Colo. 2025)).  This factor strongly weighs in favor of Petitioner.

**_Risk of erroneous deprivation._**    There is a substantial risk of erroneous deprivation of Mr. Silva Nelo's liberty interest through the use of the automatic stay provision.  Indeed, "the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing." *Merchan-Pacheo v. Noem*, No. 25-cv-03860-SBP, 2026 WL 88526, at *15 (D. Colo. Jan. 12, 2026) (quoting *Carlon v. Kramer*, No. 25-cv-03178, 2025 WL 2624386, at *3 (D. Neb. Sept. 11, 2025)).  "Yet despite prevailing at his bond hearing, the automatic stay provision allowed the Government to effectively disregard the [immigration judge]'s custody determination and deprive [Mr. Silva Nelo] of his liberty anyway." *Granillo Chavarria v. Baltazar*, --- F. Supp. 3d ---, 2026 WL 696580, at *3 (D. Colo. Mar. 12, 2026).  And as noted by sister courts, proceedings before the BIA and, potentially, the Tenth Circuit, could take years.  *See Mardanpour v. Warden*, No. 26-cv-00550-MIS-LF, 2026 WL 963164, at *6 (D.N.M. Apr. 9, 2026).

In using the automatic stay provision to stay the immigration judge's bond order, the Government was not required to demonstrate any individualized facts or show any likelihood of success on the merits.  *See* 8 C.F.R. § 1003.19(i)(2); *Rivas*, 2026 WL 444732, at *3.  Meanwhile, typically, "to obtain a stay of a judge's order requires a party to, *inter alia*, make 'a strong showing' that it is likely to succeed on the merits of its challenge to that order." *Granillo Chavarria*, 2026 WL 696580, at *4 (quoting *Maza v. Hyde*, 807 F. Supp. 3d 42, 49 (D. Mass. 2025) (in turn quoting *Nken v. Holder,* 556 U.S. 418, 434 (2009))).  "By flipping the traditional rules governing requests to stay pending appeal, the automatic stay regulation invites significant risk of error in decisions that deprive

8

individuals of their liberty." *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 33 (D. Mass. 2025); *see also Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1188 (D. Minn. 2025) ("[A] stay of an order directing the release of a detained individual is an 'especially' extraordinary step, because '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))).

**Government's interest.**  The Government does not have a significant interest in keeping Mr. Silva Nelo detained by way of the automatic stay regulation.  A neutral decision-maker has already found that Petitioner does not pose a flight risk sufficient to deny bond.  *See* [Doc. 1-2 at 62–64].  In such cases, the Government's interest in "preventing flight risks," *see* [Doc. 8-1 at 10], "is unsubstantiated and based on nothing more than mere conjecture."  *Moreno Santana*, 2026 WL 709759, at *5.

**Summary.**  For all these reasons, the Court concludes, based on the *Mathews* factors, that Mr. Silva Nelo has established that the Government's use of the automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), violates his procedural due process rights.[5]  The Petition is **GRANTED** as to Count Two, and the appropriate remedy is for Petitioner to be released upon posting the bond ordered by the immigration judge.  Respondents are

---

[5] The other district judges in this District who have confronted this issue have also concluded that the automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), violates the procedural due process rights of non-citizens similarly situated to Mr. Silva Nelo.  *See, e.g.*, *Rodriguez Alfaro v. Baltazar*, No. 26-cv-01200-PAB, 2026 WL 935969 (D. Colo. Apr. 7, 2026) (Brimmer, J.); *Arana-Hernandez v. Baltasar*, No. 26-cv-00725-CNS, 2026 WL 696642 (D. Colo. Mar. 12, 2026) (Sweeney, J.); *Granillo Chavarria v. Baltazar*, --- F. Supp. 3d ---, 2026 WL 696580 (D. Colo. Mar. 12, 2026) (Martínez, J.); *Rivas v. Baltazar*, No. 26-cv-00442-SKC, 2026 WL 444732 (D. Colo. Feb. 17, 2026) (Crews, J.).  And "at least 50 district court decisions across the United States" have found the same.  *Rodriguez Alfaro*, 2026 WL 935969, at *3 (quoting *M.P.L. v. Arteta*, No. 25-cv-05307-VSB, 2025 WL 3288354, at *7 (collecting cases)).

**ORDERED** to release Petitioner within **one day** of Petitioner posting the required bond. Though Mr. Silva Nelo also asserts that the automatic stay violates certain of his other rights, the Court need not reach those issues because it grants the relief sought based upon Count Two alone.

Regarding Mr. Silva Nelo's request that the Court award attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), the Court notes that the Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025). Should Mr. Silva Nelo believe he has a good faith basis to seek attorney's fees pursuant to the EAJA, he may file a petition in accordance with the deadlines and requirements set by the EAJA, 28 U.S.C. § 2412(d)(1)(A)–(B), and compliant with this District's Local Rules for Civil Practice.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)   The Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief [Doc. 1] is **GRANTED in part** as set forth herein;

(2)   Within **one day** of Petitioner posting the $3,000 bond ordered by the immigration judge, Respondents **SHALL RELEASE** Petitioner from custody subject to, and in accordance with, the terms and conditions imposed by the immigration judge in her January 30, 2026 order, *see* [Doc. 1-2 at 62–64], and reinstated in her February 22, 2026 order, *see* [*id.* at 72]. Respondents **SHALL NOT** impose any conditions beyond those imposed by the immigration judge; and

10

(3)    Within **five days** of Petitioner posting bond, the Parties shall file a joint status report stating (1) whether Petitioner has been released on bond and (2) whether any additional proceedings in this matter are required.


DATED:  May 11, 2026                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge